IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID M. ELBAUM                    :        CIVIL ACTION
                                   :
        v.                         :
                                   :
THOMAS JEFFERSON UNIVERSITY        :
HOSPITALS, INC.                    :        NO. 13-1538

MEMORANDUM

Dalzell, J.                                        December 3, 2013


I.   **Introduction**

        We consider here defendant Thomas Jefferson University
Hospitals, Inc.'s ("TJUH") motion to dismiss plaintiff Dr. David
M. Elbaum's amended complaint pursuant to Fed. R. Civ. P.
12(b)(6).  Dr. Elbaum brings this action under the Employee
Retirement Income Security Act (ERISA), 29 U.S.C. § 1132,
seeking a declaration that he had thirteen years of "credited
service" through the fiscal year 2009 under the Employee Pension
Plan that governed his employment with Methodist Associates in
Healthcare, Inc.  He also claims that he has continued to accrue
credited service years under the Employee Pension Plan and that,
having attained the age of fifty-five and accruing in excess of
five vesting years, he is eligible to receive an early
retirement pension under that Plan, Am. Comp. ¶ 43.  TJUH

contends that a prior arbitration award precludes Dr. Elbaum's claims.

## II.  **Standard of Review**

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6), see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'", Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", Iqbal, 556 U.S. at 678.

As our Court of Appeals has explained post-Twombly and Iqbal, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the district courts must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded

>facts as true, but may disregard any legal
>conclusions.  Second, a district court must
>then determine whether the facts alleged in the
>complaint are sufficient to show that the
>plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

We thus begin by reciting the facts as they appear in Dr.

Elbaum's amended complaint and its attachments, and from the

Employment Agreement attached to the defendant's motion to

dismiss as Exhibit A (hereinafter "Emp. Agt.").[1]

## III.  Facts

Dr. Elbaum began working for Jefferson Methodist Heart

Center, Inc. ("JMHC") on January 1, 1997, Am. Comp. ¶ 2.  Dr.

Elbaum and JMHC entered into an Employment Agreement containing

an arbitration clause.  Emp. Agt. at 15.  In 2000, JMHC merged

with Methodist Associates in Healthcare, Inc. ("MAH"), Am.

Compl. at ¶ 5, and MAH succeeded JMCH as Dr. Elbaum's employer.

When JMHC and MAH merged, Dr. Elbaum became eligible to

participate in the Thomas Jefferson University Hospitals, Inc.

Employees' Pension Plan ("the Plan"), id. at ¶ 6; Nicholas

---

[1] In deciding a motion to dismiss, a court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record", as well as any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

DePace v. Jefferson-Methodist Heart Center, Inc., AHLA No. A-1120003-216 (AHLA June 20, 2006) (Price, Arb.) (hereinafter, "Arb.") at 36.

The Summary Plan Description explains that "the number of Vesting Years which you earn determines what right you have to your benefits under the Plan when you terminate employment", and that "[g]enerally, you will complete one Vesting Year for each Plan Year in which you complete 1,000 Hours of Service", Summary Plan Description, Am. Comp. Ex. 1, at 3.

With regard to Early Retirement, the Summary Plan Description provides that "[y]ou are eligible for Early Retirement after you attain age 55 and have completed at least five Vesting Years", id. at 6;

With regard to "Disability Retirement", the Plan provides that "You will be considered to be disabled for Plan purposes if you are eligible for and receiving benefits under the Thomas Jefferson University Hospitals, Inc. Long Term Disability Plan", and

> If you were determined to be disabled on or after July 1, 1987, you continue to earn Benefit Years and Vesting Years under the Plan as if you were still working for the Employer until the date you stop receiving benefits from the Thomas Jefferson University Hospitals, Inc. Long Term Disability Plan.

4

Id. at 7.[2]

On December 16, 2003, Dr. Elbaum submitted a claim for long term disability benefits under the Thomas Jefferson University Hospitals, Inc. Long Term Disability Plan (the "LTD Plan"), Am. Comp. ¶ 8.  He avers that "[a]fter the 180 day elimination period," he "began receiving monthly long term disability benefits as a participant under the LTD plan", id. TJUH submitted a disability claim form that listed Dr. Elbaum's date of hire as January 1, 1997, id. at ¶ 9.[3]

By notice dated November 4, 2004, Dr. Elbaum's employment with MAH was terminated, effective immediately, id. at ¶ 11, but he avers that he continued receiving LTD Benefits after he was fired, see id. at ¶ 19.

That month Dr. Elbaum and his colleague, Nicholas DePace, M.D., commenced an arbitration against Jefferson-

_____

[2] It appears that a 2008 version of the Plan changed this provision, and it was Dr. Elbaum's position during his correspondence with the defendant that the 2003 Plan terms determined his benefits.  The defendant does not raise the applicability of the 2008 Plan, and so we will not consider it further here.

[3] Dr. Elbaum does not include the date of the claim form in his amended complaint, and the form, attached as Exhibit 2 to the amended complaint, is undated.  Because the form was submitted in order to process Dr. Elbaum's disability claim, it appears to have been submitted sometime after December 16, 2003, and before June of 2004 when Dr. Elbaum avers he began receiving benefits.  Because the Opinion and Award following the arbitration was issued in June of 2006, this letter predated the arbitration.

Methodist Heart Center, Inc. and Methodist Associates in
Healthcare, Inc., in which they argued, inter alia, that the
defendants erred in failing to credit Dr. Elbaum with the proper
number of years of service under the Plan.  The arbitrator
addressed the question of whether "Respondents breach[ed]
Section 5(b) of Dr. Elbaum's Employment Agreement by . . .
failing to credit Dr. Elbaum the appropriate number of years of
service under the Methodist Hospital Retirement Plan", Arb. at
34.

        The arbitrator found that "[w]ith respect to the
pension accrual issue, the record was not well developed", but
that "JMHC, which was created at the time of the acquisition of
the DePace Practices, did not offer a pension plan", id. at 36
(footnotes omitted).  As noted, in 2000 MAH succeeded JMHC as
Elbaum and DePace's employer, and "[u]pon becoming MAH
employees, both doctors became eligible to participate in the
MAH Pension Plan", id.  The arbitrator found that "[c]laimants
produced no evidence supporting their claim that they should
have received retroactive credit for their years of service with
JMHC."  Id.  The arbitrator considered Article II of the MAH
Pension Plan, which governs eligibility of employees -- like Dr.
Elbaum -- who were hired after July 1, 1989, and which states,

            Each other employee shall automatically
            become a Participant in the Plan on the

6

> first day of the month coinciding with the
> next following completion of one year of
> Service and attainment of age 21, provided
> he is not a part of a unit of Employees
> covered by a collective bargaining
> agreement, unless such agreement provides
> for such participation in the Plan of such
> Employees.

Id. (quoting the MAH Pension Plan).  Based on Article II and the
other evidence before him, the arbitrator concluded that he was
"unable to find Respondents breached Section 5(b) of Claimants'
Employment Agreements", id.

After the arbitration, by a January 16, 2007 letter
Dr. Elbaum wrote to Joseph Micucci (TJUH's Director of Human
Resources) citing TJUH's disability claim form it submitted on
his behalf and arguing that TJUH had incorrectly credited him
with only four years of vested service under the Pension Plan
for the period from January 1, 1997 through November 4, 2004,
and that he should have been credited with eight years for that
period, Am. Comp. ¶ 4.

On January 29, 2007, the United States Department of
Labor ("DOL") wrote to TJUH and asked that it supply the DOL
with a copy of the Summary Plan Description, id. at ¶ 15.

On February 8, 2007, TJUH wrote to Dr. Elbaum and
said, "As indicated in your Individual Benefit Statement . . .
you have eight (8) years of vesting service under the Plan, and,

therefore, you are fully vested in your benefit in the Plan",
Feb. 8, 2007 Letter to Elbaum, Am. Comp. Ex. 6.

Dr. Elbaum then argued that he was also entitled to
continue accruing "years of service" since he continued to
receive benefits under the LTD Plan, see Am. Comp. ¶¶ 18-19.  On
October 4, 2007, Dr. Elbaum wrote, "due to my illness and
resulting disability, Mr. Robinson terminated my employment on
November 4, 2004, and since then, I have received continuous and
uninterrupted monthly long term disability benefits under the
Thomas Jefferson University Hospitals, Inc.'s Long Term
Disability Plan", id. at ¶ 20.

E. Jane Hix, in-house counsel for TJUH, responded to
Dr. Elbaum on October 17, 2007, saying, "it appears that credit
should be given for the time that you have received appropriate
benefits under Thomas Jefferson University Hospitals, Inc.'s
Long Term Disability Plan", and "a corrected Individual Benefit
Statement will be issued to you", id. at ¶ 21.  On November 23,
2007, Dr. Elbaum received a benefit statement saying that he had
eleven years of "Credited Service", id. at ¶ 22.  Dr. Elbaum
avers that he "justifiably relied upon this corrected statement
in his financial and retirement planning", id.  On September 9,
2008, Dr. Elbaum again received a benefit statement saying that
he had twelve years of credited service, id. at ¶ 23.

Dr. Elbaum did not receive a statement for fiscal year 2009, and after he wrote to TJUH to ask why none had been sent, he ultimately got a letter from Micucci saying that "the last statement that you received [i.e., The Individual Benefit Statement dated September 9, 2008 reflected in twelve (12) years of Credited Service] was your final amount", id. at ¶¶ 24-27.

In February of 2012, Dr. Elbaum tried to apply for early retirement benefits to begin on May 7, 2012, when he turned sixty-one, id. at ¶ 31.  The Employee Benefits Office told him it was processing his request, and after a delay that extended until "just prior to June 19, 2012", a TJUH agent told Dr. Elbaum by phone that he was ineligible for early retirement benefits, id. at ¶ 33.

On June 24, 2012, TJUH sent Dr. Elbaum a letter stating that he had four years of "Vesting Service", id. at ¶ 35.  On August 10, 2012 Micucci wrote to Dr. Elbaum and explained that the time Dr. Elbaum had worked for JMHC did not count toward his service at MAHC, id. at ¶ 37.  Micucci stated that "[o]n March 31, 2003, the Methodist Hospital Retirement Plan merged with the Thomas Jefferson University Hospital Inc[.], Employees' Pension Plan", and although "the two plans were merged into a single plan, the separate benefit structures were maintained", so that "[a]s an employee of the Methodist

9

Hospital Division, [Elbaum] continued to accrue benefits under the Methodist Hospital Benefit structure", id.  According to Micucci, the difference in the plans was significant because the Methodist Hospital benefit structure requires ten years of service prior to becoming disabled in order to continue accruing credited service while disabled, while the TJUH benefit structure does not, id.  As a result, under Micucci's assessment Dr. Elbaum's "years of Credited Service should have remained at 4.0 years which [he] earned between July 1, 2000 and June 30, 2004", and, "since you did not earn 10 Years of Service, you are not eligible to commence your benefit prior to Normal Retirement Age, which is defined to be the first of the month coincident with or next following your sixty-fifth birthday", id.

On September 11, 2012, Dr. Elbaum sent a letter to TJUH challenging the determination and requesting a review by the Plan Administrator, to which TJUH did not reply, id. at ¶¶ 38-39.

## IV.  **Discussion**

TJUH moves to dismiss on the ground that "[p]laintiff's claim before this Court was the subject of a binding arbitration proceeding culminating in a final and binding order against him in June 2006", Def. MTD at 1.

Dr. Elbaum argues first that the arbitration does not have preclusive effect because he maintains that TJUH was not a party to the arbitration, Pl. Resp. in Opp. at 1.  He next argues that even if TJUH was bound by the arbitration it should be equitably estopped from raising "post hoc rationales relating to the alleged preclusive effect" because of its conduct following the arbitration, id.

A.    **Principles of Preclusion**

We apply federal law in determining the preclusive effects of earlier decisions on the ERISA matter before us. See, e.g., Berwind Corp. v. Apfel, 94 F. Supp. 2d 597, 608 (E.D. Pa. 2000) (Waldman, J.) ("The preclusive effects of a federal court decision on a federal question are controlled in any subsequent federal court litigation by federal law") (citing Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231 (3d Cir. 1995)); see also Moldovan v. Great Atlantic & Pacific Tea Co., 790 F.2d 894, 898-99 (3d Cir. 1986) (applying federal law of preclusion to determine preclusive effect of arbitration proceeding on subsequent federal litigation).

Under federal law a final judgment on the merits has two preclusive effects on future judgments -- "issue preclusion" and "claim preclusion".[4]

### 1.   **Issue Preclusion**

Issue preclusion "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties and their privies", Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999). As our Court of Appeals has explained, four requirements must be met in order for issue preclusion (or collateral estoppel) to bar a claim: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action", Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006).

---

[4] As Wright and Miller explain, although courts differ in their use of the phrases "issue preclusion", "claim preclusion," and "res judicata", "substantial progress has been made toward a convention that the broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'" 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4402 (2d ed., updated Apr. 2013). In order to avoid confusion, we will refer separately to "claim preclusion" and "issue preclusion", and we will not use the term "res judicata."

Because the test concerns the identity of the party being precluded from relitigating the issue, the doctrine allows "non-mutual issue preclusion" whereby "a litigant may . . . be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary", Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007).

### 2.  **Claim Preclusion**

Claim preclusion bars not only those claims that were actually litigated and decided in a prior proceeding, but also those claims that could have been brought, see In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008).  Claim preclusion applies where there is "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action", id. at 225 (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d Cir. 2007)) (further internal quotations omitted).

Claim preclusion thus requires a mutuality that issue preclusion does not, but the parties in the subsequent action need not be identical to the parties in the prior suit, they must only be in privity.  As our Court of Appeals has explained, a defendant may invoke claim preclusion "against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant

13

relationship between successive defendants", <u>Gambocz v.</u>
<u>Yelencsics</u>, 468 F.2d 837, 840 (3d Cir. 1972); <u>see also</u> <u>Lubrizol</u>
<u>Corp. v. Exxon Corp.</u>, 929 F.2d 960, 966 (3d Cir. 1991) (relying
on <u>Gambocz</u> for this proposition).

As Wright and Miller explain, "[i]ssue preclusion
protects the courts against the embarrassment of inconsistent
decisions and against the burden of relitigating matters once
resolved", while "[c]laim preclusion 'has at its fundamental
base the vindication of private litigants['] interest in
repose'", 18 Charles Alan Wright & Arthur R. Miller, <u>Federal</u>
<u>Practice and Procedure</u> § 4403 n.2 (2d ed., updated Apr. 2013)
(quoting <u>Clements v. Airport Authority of Washoe Cnty.</u>, 69 F.3d
321, 330 (9th Cir. 1995)).

### 3.   <u>Preclusion in the Arbitration Context</u>

Though we recognize that an unconfirmed arbitration
award like the one before us is not a "judicial proceeding"
entitled to full faith and credit, <u>see</u> <u>McDonald v. City of West</u>
<u>Branch</u>, 466 U.S. 284, 288 (1984), courts have nevertheless often
recognized such awards as having preclusive effect, <u>see, e.g.</u>,
<u>Witkowski v. Welch</u>, 173 F.3d 192, 199 (3d Cir. 1999) ("[u]nder
Pennsylvania law, arbitration proceedings and their findings are
considered final judgments for the purposes of collateral
estoppel"); <u>IDS Life Ins. Co. v. Royal Alliance Assocs.</u>, 266

14

F.3d 645, 651 (7th Cir. 2001) ("res judicata and collateral
estoppel usually attach to arbitration awards"); U.S. West Fin.
Servs., Inc. v. Buhler, Inc., 150 F.3d 929, 932-34 (8th Cir.
1998).

Granting preclusive effect to arbitration awards
serves the federal policy favoring arbitration agreements
embodied in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1,
et seq., see Moses H. Cone Memorial Hosp. v. Mercury Const.
Corp., 460 U.S. 1, 24 ("Section 2 [of the FAA] is a
congressional declaration of a liberal federal policy favoring
arbitration agreements").  Moreover, as commentators have
reasoned, "[i]f any party dissatisfied with the award were left
free to pursue independent judicial proceedings on the same
claim or defenses, arbitration would be substantially
worthless", 18B Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 4475.1 (2d ed., updated Apr. 2013).

Dr. Elbaum does not challenge the principle that an
arbitration award may have preclusive effect.  Instead, he
disputes the specific preclusive effect TJUH argues the award
here has -- and so we find that the earlier award may have had
preclusive effect.  We discuss the scope of that preclusion
below.

**B.   <u>Preclusion in this Case</u>**

According to TJUH, the arbitration decided the question of whether Dr. Elbaum is entitled to credit for additional years of service, <u>see</u> MTD at 2, and therefore claim preclusion and issue preclusion bar the current action.

We will first address the limits of the decision the arbitrator actually reached: he found that Dr. Elbaum's "vesting years" began in 2000, when he became an employee of MAH, <u>see</u> Arb. at 36, but he did not address the question of whether Dr. Elbaum would continue to accrue vesting years while receiving long-term disability benefits.  Dr. Elbaum's claim for early retirement benefits depends on his having accrued five vesting years, and so, even if the arbitration has preclusive effect here, which we will address below, it would only determine the start date of Dr. Elbaum's vesting year because Dr. Elbaum continued to receive disability through 2007, if he were able to accrue vesting years after he was no longer working -- but while he was receiving disability -- then the arbitration could not have determined the question of his eligibility for retirement benefits.

We thus turn to the question of whether issue preclusion applies here.  With regard to the first prong of the issue preclusion test, we find that the arbitration addressed

when Dr. Elbaum began accruing vesting years under the Plan -- which is identical to one of the issues he seeks to litigate here.  That issue was "actually litigated" -- the arbitrator expressly noted that although Dr. Elbaum had an opportunity to present evidence for why he should have received credit for his years with JMHC he failed to do so, while the defendants produced evidence that under Article II of the MAH Pension Plan Dr. Elbaum did not begin to accrue vesting years until he became an MAH employee.  That determination was necessary to the decision -- the issue was squarely presented, and the arbitrator directly addressed it.

        Finally, Dr. Elbaum -- the party against whom issue preclusion is asserted -- was represented during the arbitration.  On the record before us, that proceeding appears to have accorded with due process, the interest this prong protects.  See Witkowski, 173 F.3d at 205 ("A party does not have an opportunity for a full and fair hearing when 'procedures fall below the minimum requirements of due process as defined by federal law.'" (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1074 (3d Cir. 1990))).  Though Dr. Elbaum contends that he "was denied [a full and fair opportunity to litigate] because he could not litigate the present issues with the responsible party", Pl. Sur-Reply at 7, this is an argument that

depends on the identity of the defendant that is inapposite in the context of issue preclusion, which, as we have explained, does not require mutuality.

The facts Dr. Elbaum have alleged are insufficient to show a plausible claim that the issue of when he began accruing vesting years is not precluded, and so we will grant TJUH's motion insofar as it relates to that question.

But that conclusion does not determine the scope of the preclusive effect of the arbitration because Dr. Elbaum also argues that he continued to accrue vesting years while he received disability benefits.  We agree with Dr. Elbaum that the arbitration did not address that question.

TJUH argues that "Elbaum cannot deny that he had an extensive opportunity to, and did, litigate his pension claim that he is entitled to years of credited service for the period he was not working due to his disability", Def. Reply at 4. TJUH argues that Dr. Elbaum litigated the post-disability crediting during the arbitration by submitting, in his Proposed Findings of Fact and Conclusions of Law, the conclusion that "Dr. Elbaum was on an approved Medical LOA from December 17, 2003 until his termination [on] November 4, 2004" and so "should therefore be credited for 8 years of service", id. at 3 n.3 (quoting Proposed Findings of Fact and Conclusions of Law, Def.

MTD Ex. C at ¶ 750), and, since the arbitrator rejected this conclusion, the issue was necessarily decided.  Id.  But the arbitrator did not directly address the question of Dr. Elbaum's entitlement to benefits after 2003, concluding only that Dr. Elbaum was not entitled to benefits before 2000.

We agree with the plaintiff that "[t]he Arbitrator never purported to determine any rights of Plaintiff to continue receiving credit for the years after he was disabled in 2004 and beyond", Pl. Resp. in Opp. at 31, and so we find that the issue of Dr. Elbaum's post-employment entitlement was not "previously adjudicated", and Dr. Elbaum is not precluded from bringing it in the current action.

We must thus consider whether claim preclusion bars Dr. Elbaum's claim regarding his continued right to accrue vesting years.  We will first address the threshold question of whether this action constitutes "a subsequent suit based on the same cause of action", In re Mullarkey, 536 F.3d at 225.  As our Court of Appeals has explained, the term "cause of action" eludes precise definition, but in considering whether two causes of action are the same, courts look to the "essential similarity of the underlying events giving rise to the various legal claims", Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d

Cir. 1991) (quoting <u>Davis v. United States Steel Supply</u>, 688
F.2d 166, 171 (3d Cir. 1982)).

The question of whether Dr. Elbaum continued to accrue
vesting years while he received long-term disability benefits is
simply not the same question as whether he should have been
credited for his time as an employee before the merger with MAH.
The fact questions about the operation of the separate benefit
structures of the Methodist Hospital Retirement Plan and the
TJUH Employees' Pension Plan, the manner and extent to which
these differences were conveyed to employees, and any actions
Dr. Elbaum took in reliance upon that information before he
began receiving long-term disability benefits are different from
the claim regarding credit for pre-merger service that the
arbitrator considered.  We thus find that Dr. Elbaum's action
for a declaration that he should have received credit for the
years in which he received long term disability benefits -- and
therefore he was eligible for early retirement benefits -- is
not barred by claim preclusion.[5]

---

[5] Because we find that the question is not claim
precluded, we will not consider Dr. Elbaum's argument that TJUH
should be equitably estopped from asserting preclusion.

C.   <u>**Arbitration**</u>

TJUH argues that to the extent we do not dismiss Dr. Elbaum's complaint, "the claim can be decided only in an arbitration."  Def. MTD at 11.  TJUH bases this contention on the FAA and the arbitration clause in the Employment Agreement.

Dr. Elbaum counters that because TJUH is not a signatory to the Employment Agreement "there is no agreement to arbitrate between the Plaintiff and TJUH," and he "does not consent to arbitration."  Pl. Resp. in Opp. at 31.  Dr. Elbaum is correct that TJUH was not a signatory to the Employment Agreement.  The Employment Agreement was signed by Dr. Elbaum and JMHC, see Emp. Agt. at 18, and MAH then assumed JMHC's obligations at the time of the merger.

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable", 9 U.S.C. § 2.

As our Court of Appeals has explained, "no party can be forced to arbitrate unless that party has entered into an agreement to do so", <u>PaineWebber, Inc. v. Hartmann</u>, 921 F.2d 507, 511 (3d Cir. 1990), and so before we may compel arbitration the FAA "requires the court to engage in a limited review to

ensure that the dispute is arbitrable -- i.e., that a valid
agreement to arbitrate exists between the parties and that the
specific dispute falls within the substantive scope of that
agreement." Id. See also Berkery v. Cross Country Bank, 256 F.
Supp. 2d 359, 365 (E.D. Pa. 2003) (Robreno, J.) (quoting
PaineWebber for this proposition).

        With regard to the second prong of the test -- whether
the specific dispute falls within the substantive scope of the
arbitration agreement -- we note that the Employment Agreement
contains an arbitration clause that applies to controversies
regarding "the performance or interpretation of Section 5,
Section 11 or Section 7c" of the Agreement.  Emp. Agt. at 15.
Section 5(b) concerns employment benefits, and so the dispute
here falls within the arbitration agreement's scope.

        Thus, if TJUH is bound by the arbitration provision of
the Employment Agreement, we must compel arbitration.  Although
TJUH did not sign the Employment Agreement, our Court of Appeals
has repeatedly found that courts may compel arbitration with
non-signatories.  In Pritzker v. Merrill Lynch, Pierce, Fenner &
Smith, Inc., 7 F.3d 1110 (3d Cir. 1993), for example,
plaintiffs, pension plan trustees, had opened Cash Management
Accounts for Retirement Plans with Merrill Lynch, Pierce, Fenner
& Smith, Inc., ("MLPF & S"), and, in order to do so, entered

22

into a "Cash Management Agreement" with that firm.  Id. at 1112.
Merrill Lynch Asset Management ("MLAM") acted as a custodian of
the accounts but did not sign the Agreement.  When the
plaintiffs sued MLPF & S and MLAM, plaintiffs argued that the
arbitration provision in the Agreement was not enforceable as to
their dispute with MLAM because it was not a signatory to the
Agreement.  Id. at 1112, 1121.  Our Court of Appeals rejected
this argument, finding that MLAM was included in the arbitration
agreement, even though it was not a signatory.  Id. at 1122.
The Court of Appeals offered several reasons for this conclusion
-- that agency logic might apply to MLAM, and that as a
subsidiary of Merrill Lynch & Co., Inc. MLAM might be an alter-
ego of MLPF & S -- but, most relevant here, it concluded that
"arbitration agreements may be upheld against non-parties where
the interests of such parties are directly related to, if not
congruent with, those of a signatory."  Id. (citing Isidor
Paiewonsky Assocs., Inc. v. Sharp Properties, Inc., 998 F.2d
145, 155 (3d Cir. 1993)).

     TJUH argues persuasively that as the administrator of
the Plan its interests are congruent with those of MAH: "the
pension plan was administered then, as it is now, by MAH's
parent corporation -- TJUH -- which would naturally have had to
comply with any ruling as to Elbaum's pension claim in the

23

arbitration." Def. Reply at 7 (emphasis in original). <u>See also</u> <u>id.</u> at 2 n.2 (arguing that the pension issues decided in the arbitration would have been binding on TJUH). We agree. A plan administrator would be bound by an arbitration determining parties' rights under the plan, and thus with regard to those rights its interests are congruent with those of the employer.

## V.   <u>Conclusion</u>

For the reasons stated herein, Dr. Elbaum's claim regarding accrual of vesting years is not precluded and the arbitration agreement is enforceable for this claim. We will thus refer the matter to arbitration.

BY THE COURT:

<u>/S/ STEWART DALZELL, J.</u>

24