IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID M. ELBAUM, D.O. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS JEFFERSON UNIVERSITY | : | |
| HOSPITALS, INC. | : | NO. 13-1538 |

MEMORANDUM

Dalzell, J.                                                                                                          September 2, 2014

**I.     Introduction**

       We consider here defendant Thomas Jefferson University Hospitals, Inc.'s motion to dismiss for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

       Plaintiff David M. Elbaum, D.O. ("Dr. Elbaum") brought this action against Thomas Jefferson University Hospitals, Inc. ("TJUH") pursuant to the Employee Retirement Income Security Act ("ERISA"), 28 U.S.C. § 1132, seeking several declarations regarding his eligibility for an early retirement pension under the Employee Pension Plan that governed his employment with Methodist Associates in Healthcare, Inc., Am. Comp. ¶ 43. In our December 3, 2013 Memorandum, we found that one of Dr. Elbaum's claims regarding the start of his vesting years was precluded by arbitration with TJUH, Mem. at 16, that a second claim regarding the accrual of vesting years was not precluded, and that the arbitration agreement was enforceable for that claim, Mem. at 24, and we referred the matter to arbitration.

       On August 1, 2014 we ordered the parties to inform us of the status of arbitration, and, if no arbitration had taken place, to show cause why we should not dismiss the case for failure to

prosecute.  TJUH responded to that Order with this motion to dismiss pursuant to Fed. R. Civ. P. 41(b).  Dr. Elbaum responded to our Order and subsequently to TJUH's motion to dismiss.[1]

TJUH argues that Dr. Elbaum has unreasonably delayed filing for arbitration, thereby prejudicing TJUH, and had engaged in dilatory conduct while attempting to extract a settlement from TJUH. Def. MTD at 2-3. Dr. Elbaum contends that he has been attempting to settle with TJUH in good faith, Pl. Opp. MTD at 7, and has now filed for arbitration, Pl. Resp. at 5.

We set forth the standard of review.

## II.    Standard of Review

Federal Rule of Civil Procedure 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  To determine whether to dismiss a case due to a plaintiff's failure to prosecute or comply with a court order, the Court must consider the six factors enumerated in Poulis v. State Farm Fire & Cas. Co.:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

---

[1] This Court has jurisdiction to entertain a motion to dismiss for failure to prosecute under Federal Rule of Civil Procedure 41(b). We may also dismiss sua sponte. See Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) ("The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."); see also Windward Agency, Inc. v. Cologne Life Reinsurance Co., 123 F. App'x 481, 483 (3d Cir. 2005) (holding that the district court had authority to dismiss the action pursuant to Rule 41(b) and observing that other circuits have "found that a stay of proceedings pending arbitration contemplates continuing supervision by a court to ensure that arbitration proceedings are conducted within a reasonable amount of time").

747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original).

Courts in our Circuit must consider the Poulis factors because "dismissal with prejudice is, undeniably, a drastic sanction." In re Asbestos Prods. Liab. Litig. (No. VI), 718 F.3d 236, 246 (3d Cir. 2013). Nonetheless, no one Poulis factor is dispositive, and every factor need not be satisfied in order to dismiss a complaint. Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008). Dismissal with prejudice is only appropriate in limited circumstances and "doubts should be resolved in favor of reaching a decision on the merits." Adams v. Trustees of the N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 870 (3d Cir. 1994) (quoting Scarborough v. Eubanks, 747 F.2d 871, 878 (3d Cir. 1984)).

We recount the facts.

## III.   Facts

On March 25, 2013 Dr. Elbaum filed a complaint against TJUH in regard to a disputed calculation of his years of credited service under an employee pension plan.[2] The parties litigated this claim for eight months until the case was placed in civil suspense pending the outcome of arbitration.

The parties agree that after our December 3, 2013 Order referring this matter to arbitration, Dr. Elbaum's counsel contacted TJUH's counsel in an attempt to negotiate a settlement. Def. MTD at 5; Pl. Resp. at 1. Both parties also agree that further discussions were delayed until February of 2014. Def. MTD at 5; Pl. Resp. at 2. On February 4, 2014, Dr. Elbaum's counsel sent TJUH's counsel a letter arguing the merits of Dr. Elbaum's claim to an accrual of vesting years in the pension plan and suggesting that both parties request the Court to

---

[2] A factual and procedural history of Dr. Elbaum's action under the Employee Retirement Income Security Act (ERISA), 28 U.S.C. § 1132, can be found in our December 3, 2013 Memorandum. Mem. at 3-10.

3

reopen the matter for referral to a magistrate judge for settlement purposes. Pl. Opp. MTD Ex. 1 at 1, 5. TJUH's counsel responded by letter on February 21, 2014, disputing the merits of Dr. Elbaum's claim and declining plaintiff's counsel's suggestion. Def. MTD Ex. A at 5. Five months later, on July 25, 2014, plaintiff's counsel at last responded to defense counsel's letter, continuing to press the merits of Dr. Elbaum's claim and urging "amicable resolution" through arbitration. Pl. Resp. Ex. 1 at 5.

Plaintiff's counsel contends that the five-month delay was attributable to the contents of the February 21, 2014 letter. Pl. Resp. at 1; Pl. Opp. MTD at 3.[3] Plaintiff's counsel alleges that "because of [defendant's] threat of litigation against Dr. Elbaum should he proceed with the arbitration, Plaintiff proceeded to cautiously and carefully review and re-review the relevant case authority and voluminous documentation" included in the letter. Pl. Resp. at 4.[4]

---

[3] Plaintiff's counsel initially represented that the February 21, 2014 letter contained "voluminous" new documents. Pl. Resp. at 1. Defense counsel correctly noted that many of those documents had been quoted at length by Dr. Elbaum in his letters to TJUH before litigation commenced. Def. MTD at 4. Those letters were also exhibits in Dr. Elbaum's amended complaint -- which plaintiff's counsel filed. Am. Comp. Ex. 20 at 1; Am. Comp. Ex. 24 at 2. Plaintiff's counsel was also copied on one such letter. Am. Comp. Ex. 24 at 5.
Plaintiff's counsel has since apologized for this mistake and now maintains that defense counsel attached only one new document to the February 21, 2014 letter. Pl. Opp. MTD at 3, n.3.

[4] Although acknowledging his "mistake" regarding the volume of new documentation defendant produced, plaintiff's counsel maintains that the "threat made by TJUH's counsel that should Plaintiff's [sic] opt to proceed with arbitration, TJUH would respond with claims for attorney's fees and costs" caused Dr. Elbaum and plaintiff's counsel to proceed cautiously. Pl. Opp. MTD at 3-5. Plaintiff's counsel makes much of this alleged threat. The relevant portion of defense counsel's February 21, 2014 letter reads:

> The bottom line is that Dr. Elbaum can claim four (4) years of service. His claims as outlined in the pleadings and in your letter have no merit whatsoever. At this point, any further pursuit would be frivolous and would warrant TJUH seeking recovery of its fees and costs (including any arbitrator fees and costs if Dr. Elbaum chooses to pursue this matter further) that may be incurred in defending against the same. For the same reasons, your request that we further unnecessarily burden the federal court with additional

Five months later, on July 25, 2014, plaintiff's counsel wrote to defense counsel. Pl. Resp. at 5. This letter lays out Dr. Elbaum's substantive case, and although defense counsel declined to draw the Court's attention to the matter, also concluded with a threat of litigation. Pl. Opp. MTD Ex. 1 at 5 ("[W]e are urging TJUH to reconsider an amicable resolution of this dispute. Should we be compelled to proceed with arbitration of Dr. Elbaum's claims, we will seek all available remedies including the reimbursement of attorney's fees."). Pl. Resp. Ex. 1 at 5.

On August 1, 2014 we issued an Order directing the parties to inform the Court of the status of arbitration or, if no arbitration had taken place, to show cause why we should not dismiss the case for failure to prosecute. On August 6, 2014, via facsimile, both counsel informed this Court of plaintiff's counsel's intent to file a response to our Order and of defense counsel's intent to promptly file a reply. Pl. and Def. Joint Epistolary Submission, Aug. 6, 2014. The parties also informed us that on August 6, 2014 Dr. Elbaum filed his claim for arbitration with the American Health Lawyers Association Alternative Dispute Resolution Services and paid the filing fee. Id.

As noted, we analyze TJUH's motion to dismiss for failure to prosecute under Fed. R. Civ. P. 41(b).

**IV.   Discussion**

Under Poulis, to determine whether to dismiss a case for failure to prosecute we must consider (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary

---

> costs and resources through your suggestion of a Magistrate Judge for settlement is respectfully declined. At this point, the matter should be dropped now, before TJUH is required to incur further fees and costs for which it will seek reimbursement.

Def. MTD Ex. A at 5.

caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis, 747 F.2d at 868. We consider each factor in turn.

### 1. The Extent Of The Party's Personal Responsibility

Though this factor contemplates a party's personal responsibility, courts have evaluated the degree of responsibility in light of the party's relationship to counsel or the litigation itself. In National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976), the Supreme Court upheld the "extreme sanction of dismissal" after noting both plaintiffs' "flagrant bad faith" and counsel's "callous disregard" of counsel's responsibilities.  Nonetheless, a party's lack of responsibility for "counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel." Poulis, 747 F.2d at 868 (citing Link v. Wabash, 370 U.S. at 633-34).

A party's personal responsibility may be judged relative to the type of claim and the relationship between the parties. See Windward Agency, Inc. v. Cologne Life Reinsurance, Co., 353 F. Supp. 2d 538, 540 (E.D. Pa. 2003), aff'd, 123 F. App'x. 481 (3d Cir. 2005) (finding a corporate plaintiff suing a corporate defendant in a commercial dispute for a large sum of money at fault for delays because "[u]nder these circumstances, plaintiff cannot insulate itself from any dilatory conduct on the part of its attorney or attorneys.").

Dr. Elbaum does not appear to bear personal responsibility for these delays. His counsel explicitly avers that "Dr. Elbaum was represented by counsel and did not personally act in any untoward manner." Pl. Opp. MTD at 6. Both counsel emphasize their direct communications

with each other and not any conduct by Dr. Elbaum himself. Though a party may not always avoid the consequences of their counsel's conduct, here there is no evidence that Dr. Elbaum caused these delays. This factor therefore weighs against dismissal.

### 2. Prejudice To The Adversary

Prejudice to the adversary can be inferred where, due to the significant passage of time, witnesses may be unavailable or memories may have faded. Windward Agency, 353 F. Supp. 2d at 540. Prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Briscoe, 538 F.3d at 259 (quoting Adams, 29 F.3d at 874). This Court has found prejudice where plaintiffs have delayed arbitration for six or seven years. See Herrman v. Allstate Ins. Co., 450 F. Supp. 2d 537, 543 (E.D. Pa. 2006) (assuming prejudice where the underlying events took place twelve years earlier and arbitration was scheduled eight years prior to the decision); Windward Agency, 353 F. Supp. 2d at 540 (finding a material disadvantage to the defendant where the underlying events transpired twelve years earlier and arbitration had been ordered six years earlier).

Dr. Elbaum filed his complaint on March 25, 2013 -- about a year and a half ago. We ruled nine months ago, on December 3, 2013, that Dr. Elbaum and TJUH's arbitration agreement was enforceable as to Dr. Elbaum's remaining claim regarding the accrual of vesting years and referred the matter to arbitration.  Dr. Elbaum sought an arbitration on August 6, 2014 -- eight months after our Order referring the matter to arbitration and less than a week after our Order to show cause. Pl. and Def. Joint Epistolary Submission, Aug. 6, 2014.

TJUH maintains that it has been prejudiced not only by delays in the litigation from March 23, 2013 until December 3, 2013, but also by the retirement or departure of TJUH

7

employees since then. TJUH also asserts, given that Dr. Elbaum's claim is covered by the arbitration agreement, prejudice from the mere fact of Dr. Elbaum's litigation, because TJUH has been deprived of the cost savings intended in a bargained-for arbitration clause. Def. MTD at 14.

Although Dr. Elbaum's failure to file for arbitration persisted for months, and not years -- as in Herrman or Windward Agency -- his conduct has prejudiced TJUH, which has been forced into federal court to vindicate its right to resolve this matter through arbitration, only to be importuned by plaintiff's counsel to settle instead of invoking its right to arbitration. Because of Dr. Elbaum's delay in filing for arbitration, TJUH incurred costs and the inevitable fading of memories and disappearance of fact witnesses, and so this factor weighs in favor of dismissal.

### 3. History Of Dilatoriness

A party's history of dilatoriness may be considered in its entirety, including from the date of the underlying events in the case or from the order to arbitrate. Generally, the onus is on the party seeking damages to "accelerate the arbitration process," and a lack of "substantive excuse" for a "prolonged dormancy" reflects poorly on the plaintiff. Windward Agency, 353 F. Supp. 2d at 541. Thus, the Court may find that the procedural history of a case "reflects continuous dilatoriness." Emerson v. Thiel College, 296 F.3d 184, 191 (3d Cir. 2002). But "conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness." Briscoe, 538 F.3d at 261 (internal quotations omitted). A history of missing deadlines and otherwise engaging in dilatory tactics can suffice to warrant the harsh penalty of dismissal. Briscoe, 538 F.3d at 261 (paraphrasing Dyotherm Corp. v. Turbo Machine Co., 392 F.2d 146, 147-49 (3d Cir. 1968)).

Dr. Elbaum delayed seeking arbitration for eight months, five of which plaintiff's counsel attempts to account for based on the (largely imaginary) contents of defense counsel's February

21, 2014 letter. Though plaintiff's counsel's explanation for this delay falls short, such a delay does not itself constitute a history of dilatoriness, nor even a prolonged dormancy. Further, while TJUH may be offended by the mere fact of court litigation, the litigation itself from March of 2013 to December of 2013 was not plagued by dilatory conduct. Given the modest duration and relatively isolated nature of dilatory conduct, this factor does not weigh in favor of dismissal.

### 4.   Willful Or Bad Faith Conduct

The plaintiff bears "the burden of diligently pursuing its claim if it [is] still interested in seeking damages." Windward Agency, 353 F. Supp. 2d at 541. Though a party's conduct may not rise to a level of bad faith, a party's delays may be found "willful and not merely negligent or inadvertent" where the record supports such a finding. Emerson, 296 F.3d at 191. We must consider whether plaintiff's conduct was willful, contumacious,[5] or in flagrant bad faith. Briscoe, 538 F.3d at 262. Merely negligent or inadvertent conduct is not contumacious. Id.

Plaintiff's counsel's conduct here, though more than inadvertent or negligent, and bordering on willful, is neither contumacious nor in flagrant bad faith. While plaintiff's counsel's five month delay in responding to defense counsel's February 21, 2014 letter will not win praise for diligence -- and, indeed, such counsel's initial response to our Order to show cause included some (later corrected) mistaken assertions -- those shortcomings do not rise to the level of egregiousness contemplated by this Poulis factor. This factor therefore weighs neither for nor against dismissal.

### 5.   Alternative Sanctions

---

[5] In the legal context, contumacious conduct is "[w]ilfully disobedient to the summons or order of a court," or, more generally, "stubbornly perverse, insubordinate, rebellious." See III The Oxford English Dictionary 856 (2d ed. 1989).

The Poulis factors require contemplating the efficacy of alternative sanctions because of the harshness of dismissal with prejudice. Poulis, 747 F.2d at 869 ("Dismissal must be a sanction of last, not first, resort."). Egregious patterns of attorney delay may be sanctioned by the imposition of excess costs directly upon the attorney (perhaps with orders not to pass on those costs directly or indirectly to the client). Id. Such sanctions "avoid compelling an innocent party to bear the brunt of its counsel's dereliction." Id.

TJUH argues that any sanction other than dismissal would be ineffective here since it has been prejudiced by the loss of unidentified witnesses, fading memories, and the costs of litigation. Def. MTD at 16. As we noted in our analysis of the second Poulis factor, TJUH has indeed been prejudiced by Dr. Elbaum's delayed filing for arbitration. But we note that, after our Order to show cause, Dr. Elbaum soon filed for arbitration, suggesting that the specter of sanctions alone worked. Plaintiff's counsel's new responsiveness suggests that lesser sanctions will suffice, and thus this factor weighs against dismissal.[6]

### 6. Meritoriousness Of The Claim

The sixth Poulis factor considers the meritoriousness of the claim. Courts evaluate the meritoriousness of a claim using the standard for a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Heimbach v. Lehigh Cnty. Dep't of Corr., 2014 WL 1327597 (E.D. Pa. Apr. 3, 2014) (Slomsky, J.) (citing Huertas v. City of Philadelphia, 2005 WL 226149 (E.D. Pa. Jan. 26, 2005) (Hutton, J.), aff'd, 139 F. App'x. 444 (3d Cir. 2005)).

---

[6] Our Order to show cause appears at last to have put the parties back on schedule. Though defense counsel may not share our optimistic appraisal of the situation, it appears this Court has found new ways to motivate plaintiff. See, e.g., Return of the Jedi (Lucasfilm 1983) (demonstrating that mere displeasure with an apparent lack of progress can stimulate doubled efforts).

10

In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Our Court of Appeals has explained post-Twombly and Iqbal that when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the district courts must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted).

In our December 3, 2013 Memorandum, we addressed only whether Dr. Elbaum's claim that he continued to accrue vesting years while receiving long-term disability benefits was barred by claim preclusion, and whether it fell within the arbitration agreement's scope. We concluded that his claim was not precluded and that the arbitration agreement was enforceable for that claim. This claim survived a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in December of 2013, and there has been no substantive change in the well-pleaded facts and plausible claims for relief.[7] Where claims meet the Rule 12(b)(6) standard, under the Poulis factors a plaintiff's

---

[7] TJUH argues, citing to Windward Agency, that if Dr. Elbaum's claims had any merit Dr. Elbaum would have filed for arbitration, instead of attempting to settle. Def. MTD at 16-17. The relevant portion, which TJUH cites, reads:

11

claims are deemed to have merit. See Briscoe v. Klaus, 538 F.2d at 263. This factor weighs against dismissal.

**V.      Conclusion**

Poulis does not provide a magic formula or mechanical calculation to determine whether or not to dismiss a plaintiff's complaint. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992). Rather, "the decision must be made in the context of the district court's extended contact with the litigant." Id. Though not all six Poulis factors need to be satisfied to dismiss, our Court of Appeals has found that where three of the six factors had "an inadequate foundation" to support dismissal and two clearly favored the plaintiff, dismissal was unsupported. Briscoe, 538 F.3d at 264. Here, four of the six factors weigh against dismissal, one is neutral, and one weighs in favor of dismissal. Although TJUH has been prejudiced by Dr. Elbaum's delays, dismissal with prejudice for failure to prosecute would be an unduly harsh sanction in light of the other factors.

For the reasons stated herein, TJUH's motion to dismiss for failure to prosecute will be denied. The case will remain in civil suspense and is referred to arbitration. An appropriate Order follows.

---

> Finally, we come to the merits of the action. Realistically, we are not in a position to assess this factor except to comment that few, if any, corporate plaintiffs with a strong case for over $1 million in damages would sit on their hands as long as this plaintiff has done. Common sense dictates that Windward's action is likely to be of questionable merit.

Windward Agency, Inc., 353 F. Supp. 2d at 541.
  Windward Agency is distinguishable on this point. By the time we assessed the merits of the action in Windward Agency, we had already found that the previous five factors weighed in favor of dismissal. Id. at 540-41. That case involved two corporate litigants, over $1 million in damages, and a delay of years. Though common sense does suggest that such a delay might bring the merits of a claim into question, the predicate facts supporting such skepticism are not present here. Instead of using common sense proxies for merit, we evaluate the merits under the Rule 12(b)(6) standards.

/s/ Stewart Dalzell, J.